UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEBRRA LEE HUZJAK,

        Plaintiff,

   v.

                         Case No. 21-cv-1140-pp

KIM ELLIS, CAITLIN SEXTON,
AURORA ST. LUKES SOUTHSHORE,
AURORA ZILBER FAMILY HOSPICE,
AURORA HEALTH, EASTSHORE PROPERTIES,
BRENDA MATHESON, STEVEN PETERS,
KATHY BERLIN, WILLIAM BERLIN
and CHAI FRANCISCAN VILLA NURSING HOME,

        Defendants.

**ORDER OVERRULING PLAINTIFF'S OBJECTION (DKT. NO. 8), ADOPTING MAGISTRATE JUDGE DUFFIN'S REPORT AND RECOMMENDATION (DKT. NO. 7) AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

      On October 4, 2021, the plaintiff filed a complaint relating to the death of her mother and the events surrounding her mother's care. Dkt. No. 1. Magistrate Judge William E. Duffin granted the plaintiff's motion for leave to proceed without prepaying the filing fee but required the plaintiff to file an amended complaint because he could not determine a basis for the exercise of subject matter jurisdiction. Dkt. No. 4 at 5. Judge Duffin explained to the plaintiff that wrongful death is a claim arising under state law and that diversity jurisdiction did not exist because at least one of the many defendants resided in the same state as the plaintiff. Id. The plaintiff filed an amended complaint, dkt. no. 5, and Judge Duffin prepared a report recommending that

1

the court dismiss the case because the plaintiff had not stated a plausible federal claim over which the court has jurisdiction, dkt. no. 7 at 6. The plaintiff timely filed a objection to the report and recommendation. Dkt No. 8.

I. **Review of the Report and Recommendation**

   A. Legal Standard

Federal Rule of Civil Procedure 72(b)(1) allows a district court to refer a case to a magistrate judge, who then "conduct[s] the required proceedings" and "enter[s] a recommended disposition." A dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "specific written objections." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which an objection is made"). The objecting party must specify "each issue for which review is sought," but need not specify "the factual or legal basis of the objection." Johnson v. Zema Sys. Corp., 170 F.3d 734, 741 (7th Cir. 1999). The district court is required to conduct a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." Id. at 739. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." Id. (citations omitted).

   B. Judge Duffin's Recommendation (Dkt. No. 7)

In screening the amended complaint, Judge Duffin noted that the previously asserted basis for jurisdiction had shifted from diversity to alleged violations of federal law. Dkt. No. 7 at 2. He recounted that the amended

2

complaint focused on two distinct events: (1) those involving three neighbors in an apartment building where the plaintiff lived with her mother; and (2) events occurring after the plaintiff's mother moved into a nursing home under the care of a court-appointed guardian. Id. at 2-4.

Judge Duffin explained that with respect to the allegations about the apartment building, the plaintiff had alleged that neighbors threatened her and her mother, discriminated against "the aged, disabled, kids & vets" and made "racial, age, disability & religious comments—derogatory." Id. at 2. Judge Duffin observed that the plaintiff had alleged that the neighbors had broken into her apartment, hacked her account and made reports that led to a guardian being appointed for the plaintiff's mother. Id. He observed that although the plaintiff had named the "mgr.—owner," she had not identified what that person(s) did. Id.

Judge Duffin opined that the only conceivable claim would be a claim under the Fair Housing Act; he pointed out, however, that the FHA wasn't intended to make quarrels between neighbors a basis for litigation. Id. (citing Bloch v. Frischholz, 586 F.3d 771, 780 (7th Cir. 2009)). Judge Duffin observed that the plaintiff never had alleged that she had experienced discrimination; the closest she had come was to say that "they did not like it my mother was aged and weak." Id. at 3. Judge Duffin opined that even if the neighbors had broken into the plaintiff's home and hacked her accounts, the plaintiff had failed to allege that the neighbors' actions resulted in the plaintiff's actual or constructive eviction. Id. Judge Duffin reasoned:

3

> Even accepting that her neighbors initiated the chain of events that led to her mother moving out of the apartment and into a nursing home, that move was the result of independent actions by a social welfare agency. The neighbors' role is too attenuated to form a basis for liability. Moreover, given that the Department of Aging took action, there was obviously a basis for the neighbors' report. To hold that such a report could form a basis for liability under the FHA would be contrary to public policy because it could dissuade good faith reports of endangerment of vulnerable persons. Finally, any claim that might exist would appear to be that of her mother, and [the plaintiff] has not demonstrated that she is authorized to pursue a claim on behalf of her mother's estate. Thus, [the plaintiff' has not alleged a plausible federal claim against her neighbors.
>
> [The plaintiff] also fails to allege any plausible federal claim against the corporate owner of the apartment building or the person she identifies as the "mgr. – owner." As noted, she does not allege how they were involved in any dispute she had with her neighbors. Therefore, the court will recommend that all these persons and entities be dismissed as defendants.

Id. at 7.

Judge Duffin then turned to the second set of events, which occurred after the plaintiff's mother moved into the nursing home under the care of the court-appointed guardian. Id. at 4. He recounted that the plaintiff had alleged that her mother got sick with sepsis, seizures, clots and "too many drugs that caused serotonin syndrome" that shut down her mother's organs and led to her death. Id. He explained that the plaintiff had named as defendants the employee of the agency that appointed the guardian, the owner of the agency, the nursing home, the hospital, hospice and the hospital's parent entity. Id. Judge Duffin explained that while 42 U.S.C. §1983 allows a person to sue for violations of her constitutional rights committed under color of state law, *private* wrongs could not give rise to constitutional claims. Id. at 5.

4

Judge Duffin considered whether the agency that appointed the guardian could be a state actor, but determined that the right to claim that the employee had harmed the plaintiff's mother would belong to the plaintiff's mother or the mother's estate, not the plaintiff. Id. Judge Duffin noted that the plaintiff had not demonstrated that she was authorized to sue on behalf of her mother's estate. Id. To the extent that the plaintiff was trying to challenge the guardian's actions, Judge Duffin concluded that such a claim would require this federal court to improperly intrude on matters resolved by or reserved for the state court. Id. at 5.

    C.    <u>Objections (Dkt. No. 8)</u>

The plaintiff filed an eight-page, handwritten objection to the recommendation. Dkt. No. 8. She doesn't necessarily object to any one portion of the recommendation, but includes additional facts that she believes support her claim. For example, the plaintiff alleges discrimination toward herself and her mother by a criminal network at Eastshore Properties at 3615 W. National Avenue. Id. at 1. She alleges that there were threats against her mother, such as "get the bag of bones [her mother] out before we kill you" and threats "against her being elderly & white." Id. The plaintiff says "they" demanded money, stole documents and called the Department of Aging. Id. Steve Peters allegedly made jokes and "atrocities" and "stole stuff." Id. at 2. The plaintiff says she tried to contact the ACLU but got no response. Id.

The plaintiff next alleges that ANS Guardianship and Caitlin Sexton, the owner of ANS, mishandled her mother's case. Id. In addition, someone—not

5

Sexton or ANS—allegedly impersonated a "phoney" relative named Susan Huzjak. Id. At one point, the plaintiff says that "Steve Peters (Nancy Peters) is the owner/mgr. of Eastshore Properties" and "made statements/questions about things that did not concern him" that violated the plaintiff's First, Fourteenth and other constitutional civil rights. Id. The plaintiff accuses Peters of "retaliatory acts" such as cutting off the utilities, not fixing stuff, entering without a notice and "many other violations." Id.

According to the plaintiff, someone denied her the right to visit her mother, denied "her consortium, end of life visits," and cremated her mother with no religious service. Id. at 3. The plaintiff says she was not told that her mother died. Id. The plaintiff is troubled that her mother's death certificate listed "unknown" for occupation, marital status, place of birth and her parents' names. Id. at 3. The plaintiff believes this was a violation of her civil rights of "inimate [sic] association, freedom of speech" and alleges that she was threatened with violence and death and "shot at outside of Walmart a ways back." Id.

The plaintiff strings together seemingly unrelated incidents. For example, she claims that strange people come to her door at all hours and that Rick Nichols—a non-tenant—forced his way into her apartment. Id. Someone else allegedly used a racial slur toward the plaintiff's adopted cousin on West National Avenue. Id. at 4. In addition, the plaintiff alleges that she has been referred to as "a mediterran [sic] WAP/Slavic bitch and secullory [sic] woman;" "[t]hese people" called immigration on her in the past. Id. She adds that it was

6

her mother and "others such as Stacy Scott—that was persecuted in this building because she had a chacano [sic] child & was married previously to a black man & Latin man . . . ." Id.

The plaintiff clarifies that she did not file the complaint for money. Id. at 5. She would like to start a steering committee to change the laws about corporate guardians and maintains that this is a "prime social justice cause." Id. She accuses the neighbors of ID fraud, welfare fraud, extortion, beatings and attempted rapes. Id. She believes they are working with the Genovese East Coast crime family. Id. According to the plaintiff, Eastshore has lost a lot of properties to arson, fires, mortgage flipping, bankruptcy and foreclosures. Id. at 6. She asserts that "these people" filed a report in retaliation because the plaintiff wouldn't do what they wanted her to do. Id. She acknowledges that she may have to appeal or refile a different complaint with violations of the "Fair Housing Act, UCC Code, Safe Place Statute, etc." Id. at 7.

The plaintiff added a final page—an "addendum"—indicating that the tenants are "playing off Latin Kings" and that she was attacked because people were cutting into their territories. Id. at 8. She clarifies that she has no granddaughter named Lucette, no step or biological children or grandchildren and asserts that she is being threatened because of these things. Id. She asserts that she is being called her a "spic lover" and has received threats in the "Silver City area neighborhood, south side & west Milw." Id.

D. Analysis

District courts are courts of limited jurisdiction. Badgerow v. Walters,

7

___ U.S ___, 142 S. Ct. 1310, 1315 (2022). Congress authorized district courts to decide so-called "diversity" cases—lawsuits between citizens of different States as to any matter valued over $75,000—and "federal question" cases involving violations of, or failure to comply with, federal laws. Id. (citing 28 U.S.C. §§1331, 1332(a)). Judge Duffin explained that the plaintiff has not alleged facts demonstrating that this court has diversity jurisdiction; this court agrees. The plaintiff resides in Wisconsin and several of the defendants—including St. Luke's South Shore, Aurora Zilbur Family Hospice and the Franciscan Villa Nursing Home—have a principal place of business in Wisconsin. Because some of the defendants live in the same state as the plaintiff, there is no "diversity" of citizenship.

The plaintiff maintains that her claims arise under federal law. As Judge Duffin pointed out, however, the only federal statute the court can think of that might be relevant to the facts the plaintiff has alleged is the Fair Housing Act, which makes it unlawful to refuse to sell or rent, discriminate in the sale or rental or to discriminate in the terms, conditions or privileges of sale or rental. See 42 U.S.C. § 3604(a)-(f); Wilson v. Warren County, 830 F.3d 464, 467 (7th Cir. 2016). The statute also makes it unlawful to "coerce, intimidate threaten, or interfere with a person's exercise or enjoyment of the rights granted by the FHA." 42 U.S.C. §3617. The rights under §3604(a) that §3617 protects from interference include post-sale activity "that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." Watters v.

8

Homeowners' Ass'n at Preserve at Bridgewater, 48 F.4th 779, 785 (7th Cir. 2022) (quoting Bloch v. Frischholz, 587 F.3d 771, 776 (7th Cir. 2009).

The amended complaint is the operative complaint. It contains allegations concerning the plaintiff's *mother* but alleges no discriminatory acts toward the *plaintiff* beyond general allegations of harassment. Specifically, she says that three other tenants—Brenda Matheson, Kathy and William Berlin—didn't like the plaintiff's mother because her mother was "aged & weak."[1] Dkt. No. 5 at 3. She says they "harassed my family continuously, verbal threats, wanted money, obstructed us in the common areas, followed us, demanded money." Id. The plaintiff says these other tenants wanted money for beer and when the plaintiff refused, they tried to break into her apartment. Id. The plaintiff has a list of complaints about these neighbors—they allegedly assaulted people, stole mail and discriminated against the "aged, disabled, kids & vets." Id. The plaintiff's attempts to report her neighbors to authorities—and the landlord—failed, and she believes that is partially attributable to the fact that they are "possibly" related to the landlord through marriage, the landlord's brothers are allegedly drug dealers and/or they are tied to the Genovese crime family. Id. The plaintiff asserts that the building is a "crime magnet" and a health hazard, that Steve Peters talks about personal matters and that the tenants "run amuck." Id. at 3-4. She complains that the landlord did not provide a safe place to live. Id. at 4.

---

[1] In her objection, the plaintiff adds that these individuals made threats against her mother for being elderly and white. Dkt. No. 8 at 1.

9

In addition, the plaintiff attached "threatening" letters from her neighbor, Brenda, to the amended complaint.

> So just letting you know they have several things they are investigating—I'm not sure because I mind my business—I thought they came to arrest me. LOL. Thanks Brenda #28.
>
> They ask me a lot of questions about Steve, but I don't know anything about him or this building before I moved in here February 2018! Talk to you later & have a good day!

Dkt. No. 5-1 at 4, 5. The plaintiff attached another allegedly threatening note from Brenda:

> Debbie,
>
> Good morning. Have a good day and I'm not sure why MPD was in the building late last night, but I seen 2 of the officers that took Break in Report. To take report & hopefully I don't have carbon monixoide [sic] in my blood again—it's poison and sheriff's contacted test result in May. DNS got same letter and let them inspect your apartment for your case—If your not home Steve will have to let them in. Bugs & mold unhealthy living environment—21 unexplained deaths—Steve's family has a lot sueing [sic] over safety issues!

Dkt No. 5-1 at 10-11.

The amended complaint and the attachments certainly describe unpleasant conditions, which the plaintiff believes were created by her neighbors. Her objection indicates that at least one of the other tenants may have been (partially) African American, dkt. no. 8 at 1, but the amended complaint does not allege that the neighbors treated her in the ways she describes because of her race, ethnicity or disability. The closest she comes to alleging discrimination against her is where she says that she has been called a "mediterran [sic] WAP/Slavic bitch," but the amended complaint does not

10

explain who said this, when they said it or in what context. Id. at 4. Judge Duffin focused on the fact that the plaintiff has not alleged that any of the actions taken by the neighbors resulted in her actual or constructive eviction. Dkt. No. 7 at 3. Judge Duffin noted that even if the court assumed that the neighbors called the Department of Aging about the plaintiff's mother, the Department of Aging made an independent decision to move her mother to a nursing home. Id. Judge Duffin also stated that to the extent there is any claim, that claim belongs to the mother's estate and the plaintiff has not shown that she is authorized to pursue that claim. Id. at 3-4. Again, this court agrees.

That leads to the second set of allegations surrounding the appointment of a guardian for the plaintiff's mother and the care that her mother received in the nursing home. The plaintiff alleges that Caitlin Sexton acted as her mother's guardian and that "these people" were "calling Aurora & other places to illicit information & pretend to be Susan Huzjak (no person exists)." Dkt. No. 5 at 4. The plaintiff claims that ANS did not tell her where her mother was "until later" and that her mother got sick with sepsis, seizures, immobility and blood clots. Id. The plaintiff believes her mother was given "too much drugs," which caused serotonin syndrome and, ultimately, her mother's death. Id. The plaintiff alleges violations of the First, Fourteenth and other amendments but doesn't say who violated the amendments. Id. The amended complaint asks for $350,000 and a steering committee of victim's families. Id.

The attachments to the amended complaint indicate that the plaintiff contacted the State of Colorado regarding the Catholic Health Initiatives and

Franciscan Villa's alleged abuse and neglect. Dkt. No. 5-1 at 2. The plaintiff also included a letter from the State of Wisconsin explaining that it had conducted a review of the plaintiff's complaint against ANS Guardianship, Family Care, Franciscan Villa and Aurora Zilber Family Hospice and found no evidence of discrimination on the basis of "race, national origin, sex, age and disability." Id. at 13. The plaintiff attached letters from Aurora St. Luke's South Shore responding to complaints by Susan Huzjak about her late mother's care. Id. at 17-19. The plaintiff noted on the attachments that someone must have committed medical ID fraud because there is no Susan Huzjak. Id. at 17, 19. The "Original Certificate of Death" attached to the plaintiff's amended complaint lists acute respiratory failure, pulmonary embolism, prolonged immobility and advanced alzheimer's dementia as the causes of the plaintiff's mother's death. Id. at 20. Finally, the plaintiff attached an article that she wrote accusing Milwaukee's Corporate Counsel of "snatch[ing]" the plaintiff's mother out of the plaintiff's home and accusing the Wisconsin Department of Aging of helping to carry out "this theft." Id. at 22.

Judge Duffin correctly explained that a person suing for a violation of her constitutional rights must bring that suit under 42 U.S.C. §1983. Dkt. No. 7 at 4-5. To state a claim under §1983, the plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Judge Duffin noted, and this court agrees, that the only possible state actors are the guardian

appointed by the state and the guardianship agency. Dtk. No. 7 at 5. All other defendants are private actors and the plaintiff has not alleged that the private actors conspired with state actors. To the extent that any defendant can be considered a state actor, Judge Duffin correctly cited to Seventh Circuit case law discussing how the Rooker-Feldman doctrine prohibits a federal court from overturning a state court's rulings in guardianship matters. Id. (citing Scully v. Goldenson, 751 F. App'x 905, 908 (7th Cir. 2018)). Scully holds that children cannot bring claims against caretakers and medical facilities that allegedly abused their parent because they were neither the guardians, executors or real parties in interest. Id. (citing Struck v. Cook Cty. Pub. Guardian, 508 F.3d 858, 859 (7th Cir. 2007); Fed. R. Civ. P. 17(a)(1)). And the plaintiff, as a non-lawyer, cannot pursue claims on behalf of her mother's estate. Huynh v. Truax, No. 18-cv-1222-pp, 2022 WL 2291200, *6 (E.D. Wis. June 24, 2022).

The court extends its condolences to the plaintiff for the loss of her mother and for the indignities she has described. But this federal court does not have the authority to grant her relief for the facts she has alleged.

The plaintiff has had one opportunity to amend her complaint. The court need not allow further amendments where it would be futile. See Fields v. Miller, No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. April 5, 2022) (citing Zimmerman v. Bornick, 25 F.4th 491, 492 (7th Cir. 2022); Runnion ex rel. Runnion v Girl Scourts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519-20 (7th Cir. 2015); Perez v. Fenoglio, 792 F3.d 768, 783 (7th Cir. 2015)). Because the

plaintiff has not stated a claim for which this federal court may grant relief, the court must dismiss her complaint.

## II. Conclusion

The court **OVERRULES** the plaintiff's objections to Judge Duffin's report and recommendation. Dkt. No. 8.

The court **ADOPTS** Judge Duffin's report and recommendation, dkt. no. 7, and **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §1915(e)(2)(B) for failure to state a claim.

Dated in Milwaukee, Wisconsin this 13th day of June, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**